IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN L. ROMANSKY,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-05-1407** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **LOUIS S. FOLINO, *et al.,*** | : | |
| | : | |
| **Respondents** | : | |

# M E M O R A N D U M

Petitioner Steven L. Romansky, an inmate currently confined at the Greene State Correctional Institution ("SCI-Greene") in Waynesburg, Pennsylvania, commenced this action by filing a petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254. (Doc. 2.) He challenges his 1986 conviction in Monroe County. He alleges that the Commonwealth withheld four audiotape recordings pre-trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The parties have briefed the issues, and the matter is ripe for disposition. For the reasons set forth below, the petition will be denied.

## I.   **Background**

On May 23, 1985, a fire caused substantial damage to commercial property

owed by S & S Lumber Company in Tobyhanna Township, Monroe County.  (Doc.

17-4 at 51.)  On March 24, 1986, Romansky was charged with arson and related

offenses in connection with that fire.  (*Id.* at 29.)  Following a jury trial, on November

10, 1986, Romansky was convicted of arson endangering persons and arson

endangering property.  (*Id.*)  Romansky's post-trial verdict motions were denied, and

on March 26, 1987, he was sentenced to a term of incarceration of not less than three

years nor more than six years, to run consecutively to a previous sentence from

Wayne County.[1]  (*Id.* at 29, 51.)

Romansky filed a direct appeal from his sentence to the Pennsylvania Superior

Court.  On January 6, 1988, the Pennsylvania Superior Court affirmed the judgment

of sentence.  *Commonwealth v. Romansky*, 541 A.2d 32 (Pa. Super. 1988) (Table).

By order dated May 12, 1988, the Pennsylvania Supreme Court denied Romansky's

---

[1]This court recently disposed of Romansky's petition for writ of habeas corpus in which he challenged his 1986 conviction in Wayne County.  *See Romansky v. Blaine*, Civil No. 3:CV-00-1520, 2008 WL 857757 (M.D. Pa. March 27, 2008).  On February 10, 1987, Romansky was sentenced in Wayne County to a term of one and a half to four years imprisonment on the charge of reckless burning or exploding; one and a half to four years on the charge of causing or risking catastrophe; and one to two years on the charge of tampering with evidence.  *See id.* at *2.  In addition, on December 17, 1987, Romansky received an aggregate sentence of nine to eighteen years in Pike County.  *See id.* at *2, n.3.  Following a new trial in Pike County, Romansky was resentenced on March 2, 2000 to an aggregate sentence of nine to eighteen years.  *See id.*  In total, Romansky is serving a sixteen to thirty-four year sentence.  *See id.*

petition for allowance of appeal.  *Commonwealth v. Romansky*, 549 A.2d 134 (Pa.

1988) (Table).

On June 24, 1996, Romansky filed a petition under Pennsylvania's Post

Conviction Relief Act , 42 Pa. Cons. Stat. Ann. § 9541, *et seq.* ("PCRA").  Although

the court appointed counsel several times, Romansky ultimately elected to proceed

*pro se.*  (*See* Doc. 17-4 at 5.)  Following an evidentiary hearing on July 26, 1999, his

PCRA petition was denied on September 21, 1999.  (Doc. 17-4 at 13.)  Romansky

appealed the denial of his first PCRA petition to the Pennsylvania Superior Court,

which was denied on August 23, 2000.  (*See* Doc. 17-5 at 11.)

On July 24, 2001, Romansky filed a petition for writ of habeas corpus with this

court.  On January 16, 2002, the petition was denied on the merits.  *See Romansky v.*

*Blaine*, Civil No. 1:CV-01-1373, Doc. 12.  On January 6, 2003, Romansky's request

for a certificate of appealability was denied by the Third Circuit Court of Appeals.

*See id.*, Doc. 15.

On November 21, 2001, in connection with his action in this court challenging

his 1986 Wayne County conviction, Romansky filed a petition for writ of mandamus

with the Third Circuit Court of Appeals.  *See Romansky v. Blaine*, Civil No. 1:00-CV-

1520, Doc. 27.  In his petition, Romansky requested copies of four audiotapes that

had been submitted by the Office of Attorney General of Pennsylvania in response to

3

this court's show cause order in the matter filed at Civil No. 1:00-CV-1520.  *See id.*
The four audiotapes contain conversations that were recorded on December 19, 1985,
January 14, 1986, and January 19, 1986, between Romansky and an individual named
Thomas Smithers, who worked with the government to secretly record the
conversations.  *See id.*, Doc. 15.  Romansky alleged that the Commonwealth failed to
provide him with copies of these audiotapes in response to his requests for discovery
prior to his 1986 criminal trial.  *See id.*, Doc. 27.  He further alleged that the
Commonwealth's failure to provide copies of these tapes prior to trial constituted a
violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See id.*  On March 27, 2002, the
Third Circuit Court of Appeals granted Romansky's request and compelled the
Commonwealth to provide him with copies of the four audiotapes within fourteen
days.  *See id.*, Doc. 29.

Following his receipt of the four audiotapes, on April 29, 2002, Romansky
filed a second PCRA petition. (*See* Doc. 17-5 at 24.)  In that petition, Romansky
asserted that the audiotapes contained exculpatory evidence that was unavailable at
trial and would have changed the trial's outcome.  (*See id.* at 24, 26.)  On May 1,
2002, the PCRA court denied Romansky's petition.  (*See id.* at 9.)  In its January 15,
2003 Memorandum, the Pennsylvania Superior Court stated Romansky's issues on
appeal as follows:

4

1. Did the Lower Court Commit Reversible Error of Law By Denying [Romansky's] Post-Conviction Petition Without The Appointment of Counsel And Holding A Hearing In Violation of Both The Pennsylvania And Federal Constitutions?

2. Did The Lower Court Commit Reversible Error of Law By Denying [Romansky's] Post-Conviction Petition Without the Mandatory Notice Required of Intent To Dismiss In Violation of Both The Pennsylvania And Federal Constitutions?

3. Did The Lower Court Commit Reversible Error of Law By Denying [Romansky] His Compulsory Due Process Rights To A Fair Trial Under The State And Federal Constitutions When The Commonwealth Failed To Provide Exculpatory Evidence (Four (4) Cassette Tapes) As Required By Pa. R. Crim. P. Rule 305 And In Violation of [Brady v. Maryland]?

(Doc. 17-5 at 24-25.)  The Superior Court determined that Romansky's third issue regarding the availability of exculpatory evidence was dispositive of his request for relief.  (*See id.* at 25.)  Romansky asserted that the evidence in the four audiotapes placed him at a different place than the crime scene at the relevant time, thus rendering it impossible for him to be guilty.  (*See id.* at 25-26.)  Because he claimed that the audiotapes constituted exculpatory evidence that was unavailable at trial and would have changed the trial's outcome, and because he timely made this claim following the release of the tapes in March 2002, the Superior Court determined that he raised an after-discovered evidence claim.  (*See id.* at 26 (citing Pa. Cons. Stat.

5

§ 9543(a)(2)(vi)).)  Moreover, because Romansky raised an issue of material fact with regard to the audiotapes, the Superior Court remanded the case to the PCRA court pursuant to Pa. R. Crim. P. 908(A)(2).  (*See id.* at 27-28, 29.)  The Superior Court directed that, "The trial court shall convene an evidentiary hearing to determine if the audiotapes exist and to weigh the contents of the audiotapes against all the other evidence relating to guilt produced at trial."  (*Id.* at 27-28.)

On remand, the PCRA court held an evidentiary hearing, reviewed the four audiotapes, and reviewed briefs submitted by the parties.  (Doc. 17-4 at 52.)  The PCRA court determined that the four audiotapes did not contain any exculpatory evidence.  (*Id.* at 55, 57, 58.)  Thus, by order dated December 16, 2003, the PCRA court denied Romansky's second PCRA petition.  (*Id.* at 59.)

In his appeal to the Pennsylvania Superior Court from the denial of his second PCRA petition, Romansky's sole issue was that the trial court erred by denying his second PCRA petition alleging violations under *Brady v. Maryland*, 373 U.S. 83 (1963), despite the fact that it was proven at the PCRA hearing that the Commonwealth failed to turn over audiotapes prior to trial that contained material favorable to Romansky.  (*Id.* at 71.)  In a Memorandum dated October 20, 2004, the Superior Court found that the record supported the PCRA court's determination that the audiotapes are not exculpatory and that there was no *Brady* violation, and thus,

the PCRA court's order denying Romansky's second PCRA petition was affirmed.
(*Id.*)  On April 26, 2005, the Pennsylvania Supreme Court denied further review.
(Doc. 3 at 8.)

### B.   <u>Procedural History</u>

On June 6, 2005, Romansky filed an application pursuant to 28 U.S.C. § 2244
with the Third Circuit Court of Appeals seeking permission to file a second or
successive petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Docs. 1-2, 1-
3.)  By order dated July 12, 2005, the Third Circuit Court of Appeals granted
Romansky's application and directed that the application and supporting documents,
including his proposed petition for writ of habeas corpus, be forwarded to this court
for further proceedings.  (Doc. 1-1.)  Accordingly, on July 13, 2005, Romansky's
petition (Doc. 2) and supporting memorandum of law (Doc. 3) were filed with this
court.

In accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), and
*Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), on August 26, 2005, the Court issued
a formal notice to Romansky that he could either have his petition ruled on as filed, or
withdraw his petition and file one all-inclusive § 2254 petition within the one-year
statutory period prescribed by the Antiterrorism and Effective Death Penalty Act
("AEDPA").  (Doc. 6.)  On September 16, 2005, Romansky filed his notice of

election requesting that the court rule on the petition as filed.  (Doc. 10.)

Accordingly, an order to show cause was issued on April 14, 2006 and served on the

warden of SCI-Greene, the Pennsylvania Office of Attorney General, and the Monroe

County District Attorney's Office.  (Doc. 11.)  The Pennsylvania Office of Attorney

General subsequently referred the case to the Monroe County District Attorney in

light of the District Attorney's access to the records necessary to respond to the

petition.  (Doc. 12.)  On May 5, 2006, the Monroe County District Attorney filed an

answer to the petition.  (Doc. 14.)  Romansky filed a reply on May 18, 2006.  (Doc.

15.)

While the answer stated that several documents relevant to the petition would

be sent via regular mail (*see* Doc. 14 at 2), the docket reflected that these documents

were never filed.  By order dated February 27, 2008, this court directed Respondents

to file the attachments and also to provide the other documents that were specifically

required by this court's April 14, 2006 show cause order.  (Doc. 16.)  On March 6,

2008, the Monroe County District Attorney filed 815 pages of documents with the

court.[2]  (Doc. 17.)  Accordingly, the petition is ripe for review.

---

[2]On April 16, 2008, Romansky filed a "Notice" asserting that the documents filed by
Respondents show that they are "litigating the 'wrong' PCRA."  (Doc. 22 at 1.)   Romansky is
incorrect.  He claims that the instant petition challenges the denial of his third PCRA petition on
April 24, 2006.  (*See* Doc. 22 at 2.)  However, the instant petition was filed on July 12, 2005, which
was nine months before the denial of Romansky's third PCRA petition.  Moreover, in his petition,

(continued...)

The sole issue raised by Romansky in his petition is that the Commonwealth withheld the four audiotapes in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 2 ¶¶ 6, 7.)  He argues that the withholding of the tapes violated his "right to present a defense to criminal charges under due process and compulsory process." (*Id.* ¶ 7.)  He adds that, "The jurors could not possibly make a fair determination of who committed the arson while remaining ignorant of the four (4) audiotapes withheld by the Commonwealth that clearly exonerate Petitioner due to the fact that there is no part of any of the tapes that discuss the arson for which Petitioner was tried."  (*Id.*)

## II.    **Standard of Review**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner in state custody to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [the petitioner] is in custody in

---

[2](...continued)
Romansky outlines the procedural history as to his second PCRA petition to demonstrate that he exhausted the available state court remedies.  (*See* Doc. 2 ¶ 8.)

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a); *Estelle*, 502 U.S. at 67-68.  *See also Pulley v. Harris*, 465 U.S. 37, 41

(1984); *Johnson v. Rosemeyer,* 117 F.3d 104, 108 (3d Cir. 1997).


## III.   Discussion

### A.   Exhaustion

A state prisoner cannot obtain habeas relief in federal court unless he has

exhausted the remedies available in state court, there is an absence of available State

corrective process, or circumstances exist that render such  process ineffective to

protect the rights of the applicant.  28 U.S.C. § 2254(b)(1).  This statutory provision

has been interpreted to require a federal habeas petitioner to present the facts and

legal theory associated with each claim through "one complete round of the State's

established appellate review process."  *O'Sullivan v. Boerckel,* 526 U.S. 838, 845

(1999); *see also Holloway v. Horn,* 355 F.3d 707, 714 (3d Cir. 2004).  It is not

necessary for a petitioner seeking federal habeas relief to present his claims to state

courts both on direct appeal and in PCRA proceedings.  *Swanger v. Zimmerman*, 750

F.2d 291, 295 (3d Cir. 1984).  Even if the state courts refuse to consider the claim on

procedural grounds, the claim is exhausted if the state courts had the opportunity to

address it.  *Nara*, 488 F.3d at 198.

To satisfy the exhaustion requirement, a petitioner bears the burden of demonstrating that he has "fairly presented" his claims to the state's highest court, either on direct appeal or in a state post-conviction proceeding.[3] *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *see also McMahon v. Fulcomer*, 821 F.2d 934, 940 (3d Cir. 1987). A petitioner fairly presents his claim when he presents the same factual and legal basis for the claim to the state courts. *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995). In addition, the state court must be put on notice that a federal claim is being asserted. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001), *cert. denied*, 534 U.S. 973 (2001).

Romansky presented the sole issue in his petition in his second PCRA petition and to the Superior Court on appeal from the denial of that petition. (*See* Doc. 17-4 at 72-73.) Accordingly, the claim is exhausted and will be addressed on the merits.

## B.   <u>Merits</u>

Exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved

---

[3]On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218, which declares that federal habeas petitioners do not have to appeal to the Pennsylvania Supreme Court to satisfy the exhaustion requirement. The Third Circuit has recognized the validity of this order. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004), *cert. denied*, 544 U.S. 1063 (2005). Therefore, a federal petitioner in custody pursuant to the judgment of a Pennsylvania court need only appeal to the Pennsylvania Superior Court to exhaust available state remedies.

an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." § 2254(d)(2). A state court

decision is "contrary to" clearly established federal law if "the state court arrives at a

conclusion opposite to that reached by [the Supreme Court] on a question of law or if

the state court decides a case differently than [the Supreme Court] has on a set of

materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000);

*see Matteo v. Superintendent, SCI-Albion*, 171 F.3d 877, 891 (3d Cir. 1999) (quoting

*O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998) (for a decision to be "contrary

to" federal law, "Supreme Court precedent requires an outcome contrary to that

reached by the relevant state court")).

A state court decision represents an "unreasonable application of" Supreme

Court precedent if it "correctly identifies the governing legal rule but applies it

unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-

08. Thus, "a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather, that application

must also be unreasonable." *Id.* at 411.

12

A federal court may grant relief under § 2254(d)(2) where the state court based its decision on an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Section 2254(e)(1) provides that a state court's findings of fact are presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir. 2000).  A habeas petitioner must rebut this presumption by clear and convincing evidence.  *See id.*; *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).  Consequently, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

The relationship between § 2254(d)(2) and § 2254(e)(1) was explored in *Miller-El*.  There, the Court clarified that the clear and convincing standard found in § 2254(e)(1) applies only to state-court determinations of *factual* issues and should not be applied in reviewing state-court *decisions* pursuant to § 2254(d)(2).  *See id.* at 341-42.  In order to grant relief under § 2254(d)(2), this court must find that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented.  Like the "unreasonable application" prong of § 2254(d)(1), a factual determination should be adjudged "unreasonable" under

§ 2254(d)(2) only if the court finds that a rational jurist could not reach the same

finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); *Porter v.*

*Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d

1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

"This provision essentially requires the district court to step into the shoes of an

appellate tribunal, examining the record below to ascertain whether sufficient

evidence existed to support the findings of fact material to the conviction."

*Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. §

2254(d)(2) and (f)[4]).  Mere disagreement with an inferential leap or credibility

judgment of the state court is insufficient to permit relief.  *Porter*, 276 F. Supp. 2d at

296; *see also Williams*, 529 U.S. at 408-09.  Only when the finding lacks evidentiary

support in the state court record or is plainly controverted by evidence therein should

the federal habeas court overturn a state court's factual determination.  *Porter*, 276 F.

Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

    With these standards in mind, the court concludes that Romansky's *Brady*

claim is without merit.  A federal due process claim based on the prosecution's

---

[4]"If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

withholding of or failure to produce evidence is known as a "*Brady* claim"

originating in the United States Supreme Court holding in *Brady v. Maryland*, 373

U.S. 83 (1963).  The willful or inadvertent suppression by the prosecution of

"evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution."  373 U.S. at 87; *Strickler v. Greene*, 527 U.S. 263, 280

(1999).  "The evidence must be favorable to the accused, either because it is

exculpatory, or because it is impeaching."  *Strickler*, 527 U.S. at 281-82.  Moreover,

the petitioner must establish that the evidence was material either to guilt or to

punishment, and thus prejudice ensued as a result of its suppression.  *See id.* at 280-

82.  Every failure to disclose favorable evidence does not rise to the level of a

constitutional violation.  *See Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).  The

failure to disclose constitutes a due process violation only if the government's

evidentiary suppression "'undermines confidence in the outcome of the trial.'"  *Id.* at

434 (quoting *U.S. v. Bagley*, 473 U.S. 667, 678 (1985)).  The failure to disclose

evidence is not a *Brady* violation "unless the nondisclosure was so serious that there

is a reasonable probability that the suppressed evidence would have produced a

different verdict."  *Strickler*, 527 U.S. at 281.

15

Considering a *Brady* claim in a recent case, the Third Circuit Court of Appeals stated that the petitioner needed to show that the suppressed evidence was "material and favorable." *Albrecht v. Horn*, 485 F.3d 103, 131 (3d Cir. 2007). Citing the "reasonable probability" standard, the court stated "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* (citing *Kyles*, 514 U.S. at 434).

Upon review, there is no indication that the Pennsylvania Superior Court's decision on Romansky's *Brady* claim constitutes an unreasonable application of federal law. Romansky does not contend that the Commonwealth withheld all four of the audiotapes. The testimony at the evidentiary hearing held on Romansky's second PCRA petition revealed that two of the four tapes were part of the evidence at the time of trial. (Doc. 17-4 at 53.) Romansky's claim is that a review of the entire December 19, 1985 audiotape demonstrates that the recordings the Commonwealth introduced at trial relate to a different incident rather than the crimes at issue in the present case. (*Id.* at 74.) He argues that the Commonwealth's failure to provide him with the December 19, 1985 recording at trial constitutes a violation of *Brady*.

However, following a review of the record and the December 19, 1985 recording, the Superior Court found no *Brady* violation in this case. (Doc. 17-4 at

16

75.)  The PCRA court stated in its opinion that it undertook a "painstaking review" of the four audiotapes before it concluded that they were not exculpatory.  (*Id.* at 55.)  In fact, both courts noted that the recordings contain incriminating statements by Romansky and reflect negatively on him.  (*Id.* at 55, 75.)  Both the Superior Court and PCRA court cited the following exchange on the recording between Romansky (SR) and Smithers (TS) as an example of the way in which the recording supported the guilty verdict:

> TS:   Well, Steve now I was talking the other day.  How about that arson at S&S Lumber, out there, you got yourself really covered on that one?
>
> SR:   I got the money on that already, so I stand pretty well covered.  They, um, as far as arson goes, they had a new officer down there at that time.
>
> TS:   What about there at the S&S.  Did you see any cops pull in out there?
>
> SR:   No.  Used a timer, I was, where the hell was I?  I was at least home, close to it a half hour before that ever started.  I watched the timer.
>
> TS:   You watch a lot of television.
>
> SR:   No, that's the trouble with you.  You watch a lot of television.  All it takes is a battery, a battery operated timer for that.  They can't even tell you what started it.  They said it was some kind of accelerant.  So they, they can't they can't understand paint thinner, oil and gasoline (inaudible).

TS:   (inaudible)

SR:   (inaudible)

TS:   What did you use?

SR:   Paint thinner, oil and kerosene and ah 50 tons of wooden shingles that sat there.  Leaned up against the building.  It looked like someone tried to start it first (Inaudible).

TS:   Are you telling me that you used 50 tons?  I didn't even know what was involved out there.

SR:   Wooden shingles.

TS:   Oh, I heard they had that fire out before it even did any damage.

SR:   It only did about 3,000 in the back (inaudible) all it did.

TS:   Oh.  So you did a . . . poor job there too.

SR:    No, the smoke damage killed them.  That was the last thing I (inaudible)

TS:   You're such a smart guy, you don't know what you're doing.

(Doc. 17-4 at 76-77 (quoting Commonwealth Tr. Ex. 9).)  The PCRA court noted that the State Police Fire Marshall who investigated the scene of the fire testified that he found evidence of both wooden shingles and accelerants involved in the fire.  (*Id.* at 55.)

18

There is no indication in the record that the adjudication of Romansky's *Brady* claim was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). This court's own review of the audiotapes revealed that they are not exculpatory. Thus, despite Romansky's argument to the contrary,[5] this court does not find that a rational jurist could not reach the same finding as the state courts on the basis of the evidence in the record. *See* 28 U.S.C. § 2254(d)(2); *Porter*, 276 F. Supp. 2d at 296. Accordingly, this court agrees with the conclusion of the Pennsylvania Superior Court and PCRA court that there was no *Brady* violation, and there is no reason to disturb their findings. Therefore, Romansky is not entitled to relief.

---

[5]In his reply, Romansky argues that the prosecutor introduced false evidence in the form of Commonwealth Exhibit 9, which was a transcription of a portion of the December 19, 1985 recording. (*See* Doc. 15-1 at 4-6; Doc. 15-2.) Romansky provides his own handwritten transcription of the December 19 audiotape to support his argument that the S & S Lumber referred to on the recording was located in Scott Run rather than Tobyhanna Township. (*See id.* at 5; Docs. 15-3, 15-4, 15-5.) However, both the PCRA court and Pennsylvania Superior Court stated that they listened to the December 19, 1985 recording before concluding that it was not exculpatory. (*See* Doc. 17-4 at 55, 75.) Thus, they did not rely solely on Commonwealth Exhibit 9 in reaching that conclusion. Romansky's handwritten transcription of the recording does not rebut the findings of the state courts after listening to the recording.

IV.     **<u>Conclusion</u>**

For the foregoing reasons, Romansky has failed to establish a basis upon which habeas relief is warranted.  Accordingly, the instant petition will be dismissed.  An appropriate order follows.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

_____

Dated: June 11, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN L. ROMANSKY,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-05-1407** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **LOUIS S. FOLINO,** *et al.,* | : | |
| | : | |
| **Respondents** | : | |

**O R D E R**

1.     The petition for writ of habeas corpus (Doc. 2) is **DENIED**.

2.     The Clerk of Court shall **CLOSE** this case.

3.     There is no basis for the issuance of a certificate of appealability.


                                                                    s/Sylvia H. Rambo
_____
_____          SYLVIA H. RAMBO
                                                                    United States District Judge


Dated: June 11, 2008.